O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLIFFORD A. ASHING,                    )        CASE NO. CV 08-00429 (RZ)
                                       )
                    Plaintiff,         )
                                       )        MEMORANDUM OPINION
          vs.                          )        AND ORDER
                                       )
MICHAEL J. ASTRUE, Commissioner        )
of Social Security,                    )
                                       )
                    Defendant.         )
                                       )

          This matter is before the Court for the second time.  When the case was here the first time, the Court had before it the decision of the Commissioner concluding that Plaintiff was not entitled to receive disability benefits because he suffered from no impairment. [AR 19-23]  The Administrative Law Judge noted, among other things, that Plaintiff "has periodic episodes of diverticulitis of undetermined frequency."  [AR 21]  With that record, the parties stipulated that the matter should be remanded, and on remand the Commissioner's delegate, the Administrative Law Judge, should perform certain tasks.  Among other things, the parties stipulated that the Administrative Law Judge would be instructed to "[o]btain medical documentation and/or medical expert testimony, if warranted, regarding the probable frequency of flare-ups of Plaintiff's diverticulitis." [AR 274]  The Administrative Law Judge also was to be directed to explain the weight given all witness's testimony and written evidence, including the Plaintiff's.  [*Id.*]  The

stipulation of the parties was referenced in the Court's Judgment, which directed the Commissioner to conduct further proceedings consistent with the stipulation.  [AR 276] This history is important because, as the Supreme Court has said, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."  *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989) (citations omitted).

Upon remand, a different Administrative Law Judge sent Plaintiff for an internal medicine review, held a further hearing with a different medical expert, and issued a new decision denying Plaintiff disability benefits.  This time the Administrative Law Judge found that the Plaintiff had "the following, very questionable, severe impairments: diverticulosis, degenerative changes of the right knee, and exogenous obesity."  [AR 267 (citation omitted)]   The only impairment at issue in this case concerns Plaintiff's diverticulosis.

As explained by the medical experts at both  hearings, diverticulosis is the condition which Plaintiff has, of having "pockets" on the bowel; it is when the pockets become infected or inflamed that diverticulitis exists.  [AR 74 (first hearing); AR 327 (second hearing)]   The key issue on remand had to do with the frequency of bouts of diverticulitis.  Plaintiff's primary argument in this Court is that the Administrative Law Judge ignored the testimony of the medical expert from the first hearing, who had opined that Plaintiff might in fact have had to miss 50 days a year of work due to episodes of diverticulitis.  [AR 73]

In this Court, Defendant responds that the Administrative Law Judge was free to pursue the inquiry in his own way, and that what he decided to do was to order an internal medicine evaluation.  That evaluation, however, shed no light on the question that was remanded, which had to do with assessing the medical record if one existed, or the likelihood if one did not, of how frequently Plaintiff would have to miss work due to bouts of diverticulitis.  The information on this point in the internal medicine evaluation came largely from Plaintiff [AR 301], and the only reference to frequency of bouts of

diverticulitis is found in the portion of the report labeled "Diagnostic Impression," which states "[c]hronic abdominal pain and diarrhea secondary to history of chronic diverticulosis and intermittent diverticulitis." [AR 306]

But, just how intermittent was the question because, as the first Administrative Law Judge tellingly noted, "this case pretty much turns on how often the Claimant would miss work." [AR 75] Neither the medical expert who testified at the first hearing, nor the medical expert who testified at the second hearing, found any medical documentation of the frequency of the episodes. [AR 73 (first hearing); AR 323 (second hearing)] The only expert evidence of any prediction concerning the frequency of such bouts was the aforementioned aside by the medical expert from the first hearing that "[h]e would be expected to miss work – maybe his estimate of 50 days per calendar year is fairly close." [AR 73] In a not dissimilar vein, the medical expert at the second hearing acknowledged that the type of condition which Plaintiff might have is a condition that tends to flare or recur intermittently. [AR 325]

The Administrative Law Judge answered the question of frequency using a different methodology. He found as follows:

> The claimant has not been hospitalized in ten years. Since the alleged onset date of disability, he has made no emergency room visits and sees his current general practitioner only once or twice a year. There is not the slightest evidence of deficiency of nutrition. In fact, the claimant has at all times since the alleged onset date been obese. His weight indeed went up to 280 pounds and he said he deliberately reduced it to his current (though still obese) weight of 260 pounds by avoiding sugar. There is no evidence of anemia or lack of nutrient elements or electrolytes in the blood. These undeniable facts strongly militate against the claimant's assertions of incapacitating

1    gastrointestinal symptoms, which allegedly would prevent work

2    10 to 12 days a month.

3

4  [AR 268]  The notion that a person who maintains and even increases his weight cannot

5  have intermittent, debilitating bouts of diverticulitis is not intuitively obvious; more to the

6  point, it is a judgment which demands *medical* expertise, and is not one which an

7  administrative law judge may make without medical evidence.  Likewise, the facts that

8  Plaintiff had not been hospitalized for ten years, and only sees his physician once or twice

9  a year, do not by themselves speak to the frequency of the bouts of diverticulitis.  Plaintiff

10 testified that he did not more aggressively seek treatment because he had been told that

11 there was no cure and that he was doing what he could [AR 335]; the Administrative Law

12 Judge did not refer to any contrary medical opinion to justify his implied rejection of

13 Plaintiff's statement.  The Administrative Law Judge is not himself a doctor, and he may

14 not act as one.  *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Manso-Pizarro*

15 *v. Secy of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996).  Yet that is what he

16 did in framing his response, albeit indirect, to the issue remanded.

17          So the administrative record lacks the evidence that is central to this case; as

18 the medical expert at the second hearing testified, a person could not work during a flare-up

19 of diverticulitis.  [AR 328] Thus, the frequency of flare-ups, either actual or expected, may

20 affect the residual functional capacity and, in turn, whether there are sufficient jobs in the

21 economy which Plaintiff could perform.  Under the present state of the record, the

22 Commissioner's decision is not backed by substantial evidence.

23          The decision therefore is reversed, and the matter is remanded to the

24 Commissioner for further proceedings consistent with this memorandum opinion.  On

25 remand, the Administrative Law Judge should consult a medical expert as to the effect of

26 Plaintiff's diverticulosis upon his ability to work, specifically addressing the actual or

27 expected frequency of flare-ups.  The Administrative Law Judge should also discuss all

28

1  relevant evidence on the subject, including statements or reports, such as Plaintiff's wife's

2  contemporary calendar.  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

3       IT IS SO ORDERED.

4

5       DATED:   October 8, 2008

6

7

8                 RALPH ZAREFSKY

9       UNITED STATES MAGISTRATE JUDGE